

January 27, 2025

**VIA ECF**

Hon. Steven Tiscione
U.S. District Court
Eastern District of New York
225 Cadman Plaza E.
Brooklyn, NY 11201

    Re:    Malkin v. Proud Moments Licensed Behavior Analysts, PLLC
            Docket No.: 21-CV-04834 (ENV)(ST)

Dear Magistrate Judge Tiscione:

This firm represents Plaintiff Tzirel Malkin ("**Plaintiff**" or "**Malkin**") in the above-referenced matter (the "**First Case**") as well as the second litigation between the same parties that is docket number 2:24-cv-04974-NCM-AYS ("**Second Case**" and together with the First Case as the "**Litigation**"). We submit this motion jointly with counsel for Proud Moments Licensed Behavior Analysts, PLLC ("**Defendant**" or "**Proud Moments**") and collective with Plaintiff as the "**Parties**") seeking approval of the Settlement Agreement (attached hereto as **Exhibit A**) ("the **Agreement**") as fair and reasonable.

The terms of the Agreement were reached during an in-person Settlement Conference between the Parties before Hon. Steven Tiscione on December 19, 2024 (the "**Settlement Conference**"). Specifically, during the Settlement Conference, the Parties were able to reach a global settlement encompassing both the First Case and the Second Case.

Now, the Parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 2d 332, 335-336 (SDNY 2012) as a basis for why the Court should approve the Agreement. Separately, Plaintiff's law firm addresses its request for attorneys' fees and its fee arrangement with Plaintiff.

    I.    **PLAINTIFF'S SUMMARY OF HER ALLEGATIONS IN THE LITIGATION**

Malkin was employed by Proud Moments as a Licensed Behavioral Analyst ("**LBA**") from October 2015 to October of 2022. Almost entirely throughout her employment, Malkin was paid on an hourly basis based on the number of hours that she worked in a week. Except for a brief



period of time from approximately December 2016 through the middle of 2017, Malkin, like all other Proud Moments employees, was treated and paid as a non-exempt employee with an hourly rate of $100.00 per hour.

During her employment, Malkin repeatedly was required to work in excess of 40 hours a week without Proud Moments paying her the appropriate overtime compensation as required by the FLSA and NYLL. As noted above, Malkin's regular hourly rate is $100.00 per hour. As a result, Malkin's overtime rate is $150.00 per hour for all hours worked in excess of forty (40) hours in a week. When Malkin would work in excess of forty (40) hours per week, Proud Moments. would pay Malkin at her regular hourly rate (i.e., $100.00) for all hours worked in excess of forty (40) hours for the week as opposed to her overtime rate of one and one-half times her regular rate (i.e., $150.00). As a result, Proud Moments failed to pay Malkin the additional overtime premium of at least fifty dollars ($50.00) per hour that she was entitled to receive by law for each hour of overtime worked in excess of forty (40) hours per week.

For example, for a two-week period from May 1, 2020, through May 15, 2020, Malkin was paid for 130.00 hours of straight time at her hourly rate of $100.00. However, for the two-week period, Malkin could only have worked a maximum of 80 hours (i.e., 40 hours per week) of straight time and anything above that amount should have been paid at Malkin's overtime rate. As such, Proud Moments failed to pay Malkin the overtime premium on at least fifty (50) hours of her time worked, which equates to at least $2,500.00 in unpaid overtime for just this one pay period alone. The foregoing pattern and practice was consistent through Malkin's employment with Proud Moments through 2021.

Defendant disputes the above factual assertions and states that the documents produced in discovery do not reflect failure to pay overtime.

As a result, Malkin was not paid for all of the hours that she worked for Proud Moments. Specifically, Malkin performed work for Proud Moment's clients (which she kept track of on an hourly basis) and submit her hours worked for payment. However, on numerous occasions, Malkin's was not paid, and, in fact, Proud Moments refused to pay Malkin for all the hours that she worked even though they were properly submitted to Proud Moments. In fact, in one month in particular, Proud Moments refused to pay Malkin for any of the work that she performed during that month, which Proud Moments asserted was because they would allegedly not be reimbursed by the insurance company for the hours that Malkin worked.

Defendant states that Malkin was responsible for tracking her hours worked and timely submitting the information. However, Malkin was often tardy in reporting her working hours, which resulted in payment delays.



Additionally, Proud Moments did not pay Malkin for her travel time between patients during the day. In fact, none of Malkin's paystubs show any travel time being paid despite the fact that she regularly traveled between patients during the day.

Defendant asserts in response that Plaintiff failed to allege a claim for travel time pay in her Complaint and the time to amend her Complaint expired months ago. Moreover, much of Malkin's work for Defendant was conducted remotely and there was a negligible amount of travel considering many of the clients lived in the same geographic area.

Malkin filed the Complaint in the First Case on or about August 26, 2021. However, Defendant's agent for service of process was served with the First Case on or about September 8, 2021. After Malkin served Proud Moments with her Complaint in the First Case, she alleges that she was subject to retaliation and ultimately her termination for filing her FLSA complaint.

Specifically, Malkin alleges that, prior to filing her lawsuit, she regularly had a full case load and was always provided with new patients in Long Island so she could maintain her full-time case load; however, after filing her lawsuit, Proud Moments refused to provide Malkin with new cases in Long Island even though it had numerous new incoming cases in the Long Island area between October 2021 and Malkin's termination in October of 2022. Plaintiff alleges this was done in order to "freeze" her out and reduce the amount of money that she could earn as well as force her to commute farther for any cases that she was offered in order to make them less appealing to her. Proud Moment's emails that did offer Malkin new cases were also quickly rescinded within minutes of being sent to her in order to prevent her from getting the cases. As a result of Malkin not receiving any new case assignments since October of 2021, her caseload dropped significantly from what she previously had during her employment prior to filing her lawsuit.

Defendant denies these allegations.

Additionally, prior to filing her lawsuit, Malkin also did work, with Proud Moment's approval, for another company's summer camp. However, in order to directly retaliate against Malkin for her lawsuit, Proud Moment's ownership actually called the company and directly told them that they could not employ Malkin to do the work she had previously done, which was expressly done to negatively impact Malkin's income as well as to retaliate against her for filing her lawsuit and to try to force Malkin to resign.

Again, Defendant denies these allegations.

Proud Moments also intentionally did not send Malkin her renewal paperwork for her health insurance after she filed her lawsuit so she would also lose all medical coverage for herself and her family. Even after Malkin complained, Proud Moments refused to provide or renew her health care coverage for 2022. As a result, Malkin lost all of her health care coverage for her and her entire family for 2022, which includes, but is not limited to, medical, eye, and dental insurance.



Defendant denies retaliation or that it was responsible for Malkin failing to timely submit her insurance renewal paperwork.

Finally, the Parties mediated the First Case a first time[1] on or about July 15, 2022; however, the Parties were unable to reach a settlement and Malkin refused to dismiss her case against Proud Moments. Rather, Malkin pressed forward with her case. Shortly after, on October 12, 2022, Malkin sent Proud Moments extensive discovery requests signaling to Proud Moments that Malkin was not going to dismiss her case, but instead vigorously prosecute the First Case. In response, just a week later, on October 19, 2022, Proud Moments terminated Malkin's employment in direct retaliation for the filing of and refusal to dismiss her First Case as well as to intimidate any other employees from coming forward.

As a result of the foregoing harassment and discrimination, Malkin has suffered and continues to suffer a great deal of emotional distress as a result of Defendant's actions.

Malkin acknowledges the foregoing is a recitation of her allegations and that all of the foregoing are expressly disputed by Proud Moments as they specifically deny all of Malkin's allegations. The Parties' differing positions respecting the facts created risk to both sides, which makes settlement prudent for the Parties.

## II.   THE WOLINSKY FACTORS

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

### A.   The Plaintiff's Range Of Possible Recovery:

#### 1.   Plaintiff's Position

As stated above, Malkin commenced the First Case on August 26, 2021, for violations of federal and state labor laws, including: (i) overtime wage violations under the Fair Labor Standards Act of 1938, 29 U.S.C. §201 *et seq*. ("**FLSA**"), the New York Labor Law ("**NYLL**") §§190 *et seq*. and 650 *et seq*., and the overtime wage orders of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6; (ii) minimum wage violations under the FLSA and NYLL; (iii) failure to pay wages in accordance with agreed upon terms in violation of NYLL §191 *et seq*.; (iv) failure to provide accurate wage statements and notices in violation of NYLL §195; and (v) all applicable liquidated damages, interest, attorneys' fees, and costs under the FLSA and NYLL for the violations of those laws.

In addition to asserting that she was not provided the proper wage notices under the NYLL, Malkin alleged in the First Case that she worked 4865 hours of overtime where she was not paid the

---

[1] A second mediation occurred in July of 2024 as well.



overtime premium of $50 from the period beginning six (6) years before the Complaint was filed in the First Case through June of 2021 when she began receiving overtime compensation. Malkin also asserted that Proud Moments refused to pay her at all for 153 hours of work that she performed. Finally, Malkin asserted that she was not paid travel time during her employment, which, even at one (1) hour per day would result in 1,603 hours for all of the workdays during the period beginning six (6) years before the Complaint was filed in the First Case through the date of her termination in October of 2022.

During discovery, Plaintiff's paystub and other time records were produced. Plaintiff's office carefully reviewed these documents. Defendant's records indicate that they did not keep track of time or pay on a weekly basis but rather paid on inconsistent basis with sometimes it being twice a month on the 15th and last day of the month, sometimes once a month, and other times several months in the future. Additionally, Defendant's records on actual hours worked each week do not exist. As a result, there is a disagreement between the Parties on the total number of potential hours that Plaintiff worked more than 40 hours a week and could have been entitled to overtime since it is difficult to ascertain which hours belong to which workweek. In fact, according to Defendant's calculation, the total number of hours that Plaintiff could even potentially claim as being in excess of 40 hours per week is less than half of Plaintiff's calculation above.

Defendant has also asserted that Plaintiff worked from home on certain days and did not travel to clients on every day that she worked or did not have to travel between clients on every day such that the total number of days on which she could even potentially claim to be owed travel time is significantly lower than Plaintiff's estimate.

Finally, Defendant has also asserted that Plaintiff was properly classified as exempt under the NYLL such that the total period of potential liability would be reduced from six (6) years before the Complaint was filed, which is the NYLL period, to just three (3) years from before the Complaint was filed, which is the "FLSA Period."

If we assume that Defendant is right simply on the NYLL classification, Plaintiff believes that she could establish unpaid overtime of approximately $212,124.00 during the FLSA Period and, even if Defendant's calculation is correct as to the potential number of hours being less than calculated by Plaintiff (as the total disputed hours is unclear based on Defendant's records), then $110,000.00 based on Defendant's maximum hour calculation. Plaintiff also believes that Plaintiff can establish unpaid travel time during the FLSA period of at least $108,200, but even if Defendant's calculation is correct and Plaintiff's maximum potential travel time is less than half of Plaintiff's estimate that Plaintiff could still establish at least $15,000.00 in travel time owed. Finally, with respect to the unpaid hours, Defendant contends that it paid all hours, but if Plaintiff is correct, then she would be able to recover $15,300 for those unpaid hours.

Based on the foregoing, we believe that Plaintiff could recover in the range of $125,000.00 to $335,624.00 in unpaid wages for the FLSA Period alone (i.e., the period from three (3) years from

before the Complaint was filed through today) in addition to interest, liquidated damages, attorneys' fees, and recovery for a wage notice violation. As such, we believed that Plaintiff's reasonable range of recovery was between $0.00 and $335,624.00 for just the FLSA period in the First Case **plus** attorneys' fees, interest, and liquidated damages.

With respect to the Second Case, Malkin commenced the Second Case on July 18, 2024, for retaliation under the FLSA and NYLL, including for liquidated damages, emotional distress damages, reasonable attorneys' fees, costs, and pre and post judgment interest under the FLSA and NYLL for the violations of those laws. As discovery has not commenced in this case, Plaintiff was not able to uncover the full nature of all of Defendant's retaliatory activities. As a result, Plaintiff estimates her damages based on her allegations only and not any additional evidence that may or may not have come to light during discovery.

While there is no set calculation for emotional distress damages, Plaintiff's emotional distress was severe, which manifested itself in symptoms in addition to anxiety and depression such as anguish, dejection, depression, sadness, embarrassment, humiliation, frustration, anger, fear, loss of confidence, feeling a lack of importance, fatigue, stress, shame, irritability, muscle tension, mood swings, reduced motivation, fear of retaliation, lack of appetite, and inability to sleep, to name a few. In fact, Plaintiff was the sole provider for her family and the constant threat to her job as well as the reduction in her income caused Plaintiff an immense amount of frustration, anger and stress as Plaintiff was responsible for trying to figure out how to provide for her family in the midst of Defendant's retaliation. Moreover, and one can imagine future how much humiliation, frustration, and anxiety was caused as well as the sheer sense of hopelessness that overcame Plaintiff with the loss of her health benefits for her entire family for an entire year as Plaintiff had to look at her children every day and worry about not only obtaining care for any illness or injury that they might suffer, but also that any such serious illness or injury could potentially bankrupt their family without medical insurance. Plaintiff's termination was also a humiliating point in her life as she prided herself on her work and work ethic. Not only was this depressing, but left Plaintiff feeling that she was unimportant, humiliated, embarrassed, dejected and depressed. Additionally, the anxiety and fear of now, today, of making less money as a result of Defendant's retaliation has continued to place an incredibly amount of stress and anguish on Plaintiff as she must figure out a way to provide not only for herself, but her children as well. These are only a few examples of the severe emotional distress that Plaintiff has suffered and continues to suffer to this day. Given the foregoing, Plaintiff estimates that, conservatively, she would be able to obtain at trial approximately $750,000 in emotional distress damages because of Defendant's egregious actions (which Plaintiff calculated by using Plaintiff's last full year of her salary as a multiplier) plus liquidated damages, reasonable attorneys' fees and costs. As a result, Plaintiff estimates that her recovery at trial for her FLSA and NYLL retaliation claims, if successful, would be between $0 and $1,500,000, when factoring in liquidated damages, reasonable attorneys' fees and costs.



2. Defendants' Position

Defendant denies that it owes Plaintiff any money. Defendant asserts that Plaintiff was properly classified as exempt under the NYLL and FLSA. Also, as earlier stated, Defendant asserts that Plaintiff was properly paid all travel time if she did travel between clients, but that Plaintiff did not travel between clients on most days because she worked remotely and, when seeing clients, she often saw them at one location during the day.

Defendant also asserts that it properly terminated Plaintiff for not meeting the terms of a Performance Improvement Plan and that it did not retaliate against Plaintiff in any way.

However, to avoid the time and expense of litigation, Defendant believes it was in their interest to settle this matter for the agreed-upon number.

B. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in both the First Case and the Second Case against Defendants for $650,000.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the defenses and records maintained by Defendant in this matter. Moreover, the settlement amount was only achieved after hours of continued negotiations after two private mediation sessions (in July 2022 and July 2024) and a Settlement Conference before the Hon. Steven Tiscione. The parties had genuine, bona fide disputes over the classification of Plaintiff, potential overtime hours worked by Plaintiff if Plaintiff was misclassified (which Defendant disputes), the pay received by Plaintiff, the potential number of hours for travel time if Plaintiff was misclassified (which Defendant disputes), whether Plaintiff was retaliated against, and whether Defendant's classification of Plaintiff as exempt was correct, both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Moreover, the settlement amount falls squarely in the realistic, possible range of settlement and allows Plaintiff to recover a substantial sum of her alleged unpaid wages – a figure strongly contested by



Defendants – as well as compensation for the retaliation that she suffered and the continued emotional distress that Plaintiff suffers today and will continue to suffer in the future as a result of Defendant's actions, which is discussed in Section II(A)(1) above (and which Defendant disputes). The Settlement also takes into account both the risks of obtaining a judgment at trial and whether Plaintiff would be able to collect on any such judgment post-trial as well as the uncertainty of Defendant's records that makes calculating Plaintiff's potential damages difficult as well.

###    C.    The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses"

The settlement still enables the parties to avoid the anticipated burdens and expenses of additional formal paper discovery, including exchanging interrogatory and document demands and responses on each other in both the First Case and Second Case, as well as additional motion practice (including, but not limited to, summary judgment motions), depositions (including at least four depositions that were already scheduled) and two (2) trials and potential appeals.

Had the parties not reached a settlement, both sides faced significant time and expenses dedicated to conducting at least two trials (which each would have lasted a minimum of 5 to 7 days), an undetermined number of depositions, and extensive motion practice and discovery in two separate cases. Defendant would also have also been required to dedicate significant time and money toward two trials, which would have served as a distraction to operating their business, and Plaintiff would have had to take significant time away from her present job at great financial expense to herself. As a result, the settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

###    D.    The seriousness of litigation risks faced by the Parties

Both parties faced significant risks had they proceeded to trial in this matter.  Although Plaintiff was confident that she could succeed on all his claims, Plaintiff recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiff also could have recovered less than agreed-upon settlement at trial.  Moreover, Plaintiff could have obtained a judgment against Defendant at trial on which she could not collect. The seriousness of this risk favored a guaranteed payment through a Court approved settlement for Plaintiff.

Defendants also faced the risk of losing on summary judgment and/or trial and not only having to pay any potential unpaid wages, emotional distress damages, back and front pay, liquidated damages, interest and penalties to Plaintiff but also Plaintiff's counsel's reasonable attorneys' fees, which between the two cases would have likely exceed the settlement amount in and of itself.

Both parties also risked the time, costs and delay of potential appeals.



### E. Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"

The parties engaged in extensive back-and-forth settlement discussion. Specifically, the Parties engaged in two (2) private mediations in July 2022 and July 2024 as well as Settlement Conference before this Court through a Settlement Conference held on December 19, 2024. In total, attorneys for the Parties and the Parties themselves have spent approximately 16+ hours each attending the two (2) mediations and the settlement conference in addition to extensive settlement correspondences that were exchanged between the Parties as well.

Plaintiff is represented by multiple attorneys who specialize in wage and hours matters, including both FLSA and NYLL matters, and have settled hundreds of wage-and-hour cases in both state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

Further, the terms of the Settlement Agreement were the product of continued arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts.

### F. No possibility of fraud of collusion

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

### III. REQUESTED ATTORNEYS' FEES AND DISTRIBUTION TO PLAINTIFF

The parties agreed to a global settlement of $650,000.00. If the Agreement is approved by the Court, Plaintiff will recover $374,089.93 after requested attorneys' fees and reimbursement of expenses.

- Plaintiff's counsel respectfully requests $15,235.12 for identifiable expenses for the First Case, which include mediation fees, witness fees, filing fees, travel expenses, delivery service fees, deposition transcripts, Pro Hac Vice fees, etc.

- Plaintiff's counsel respectfully requests $861.28 for identifiable expenses for the Second for Plaintiff's filing fee, notary service fee, service of process fee, and Pro Hac Vice fees.

On August 17, 2021, Plaintiff and Plaintiff's counsel executed an engagement letter that provided for Plaintiff's counsel to be entitled to forty percent (40%) of the gross recovery, before payment of any costs, if any matters between herself and Proud Moments was resolved before trial. The engagement letter is attached hereto as **Exhibit C**.

The agreement also provided that Plaintiff's counsel would be entitled to reimbursement of costs of litigation, including, but not limited to, costs of investigators, process servers, attorney services and messengers, court reporters, expert witnesses, expert consultant and witness fees, filing fees and other court costs/fees, deposition costs, court transcripts, discovery referees and mediators, jury fees, special master fees, investigation fees and expenses, photocopying, printing and other reproduction charges, exhibits, graphic artist and filming fees, PowerPoint fees, computer animation fees, computer reenactment fees, computerized research, word processing charges, mock trials or focus groups, jury trial consultant fees, and charges for long distance telephone calls, photocopies, travel costs (including mileage, charter and other air travel, accommodations, meals, parking and other incidental travel expenses), FedEx and UPS fees, any other messenger and/or other delivery charges, postage, fax charges (in each case, to the extent applicable), and any other necessary expenses. All costs are due upon recovery of any settlement or judgment, or as otherwise ordered by the Court.

As a result, Plaintiff's counsel respectfully requests forty percent (40%) of the settlement (i.e., $260,000.00) plus their reasonable expenses for both the First Case and the Second Case ($16,096.40), as agreed upon in the Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $276,096.40.

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their client throughout both litigations and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff. Moreover, as shown by Plaintiffs' counsel's contemporaneous billing records, which are attached hereto as **Exhibit B**, the value of Plaintiff's counsel actual total hours already spent working on both the First Case and the Second Case exceed the requested attorneys, when factoring in Plaintiff counsel's billing rates. ***See* Id**.

In fact, together, Mr. Valles and Ms. Rathjen have billed well in excess of 400 hours combined on both the First Case and Second Case. When factoring in Mr. Valles' and Ms. Rathjen's billable rates, as discussed below, the actual value of the hours worked by both Mr. Valles and Ms. Rathjen is nearly $300,000, well exceeding the attorneys' fees requested here.

Mr. Valles received his J.D. degree in 2009 from Boston College and has been practicing employment law for over fifteen (15) years with over a decade spent working at three major law firms, including two international law firms, Baker McKenzie and Nixon Peabody. Mr. Valles' current billable rate at Valles Law is $695.00 per hour, which is not only reasonable given Mr. Valles' extensive experience, but also the rate that is regularly paid by Valles Law's hourly clients for Mr. Valles' services. Ms. Rathjen received her J.D. degree in 2019 from Boston College and has been practicing law for over five (5) years, including previously at the law firm Jackson Lewis,



P.C. before joining Valles Law, P.C.  Ms. Rathjen's current billable rate at Valles Law is $495.00 per hour, which is not only reasonable given Ms. Rathjen's experience, but also the rate that is regularly paid by Valles Law's hourly clients for Ms. Rathjen's services.

For ease of refence, the settlement is broken down into its component parts is as follows:

- Settlement Amount: $650,000.00
- Attorneys' Expenses: $16,096.40
- Requested Attorneys' Fees: $260,000.00
- Total payable to Plaintiff: $373,903.60

Plaintiff's payment will be attributed as $190,000 to wages and $183,903.60 to emotional distress.

For Plaintiff's wages, the settlement attributes $125,000 to her back wages for her unpaid overtime and travel time payments during the FLSA Period in the first case, which represents 100% of the estimated amounts that Plaintiff would have recovered at trial (not including liquidated damages or attorneys' fees) if Plaintiff were able to prove her case at trial and Defendant's estimated calculations of hours and time at issue during the FLSA Period is accurate. The settlement payment also attributes $65,000.00 to her claims for alleged, but disputed future lost wages, front pay, or benefits to be paid.

The remainder of Plaintiff's settlement payment (i.e., $183,903.60) is attributable to her emotional distress that she suffered in the Second Case and is equivalent to well less than even one (1) year of Plaintiff's last full year salary from her employment with Proud Moments.  As Plaintiff has alleged in her Second Case and discussed herein above, Plaintiff suffered extreme emotional distress as a result of Defendant's actions and continues to suffer from that emotional distress today and will continue to suffer from it in the future.  The amount attributable to Plaintiff's current and future emotional distress damages is equivalent to less than $1/3^{rd}$ of what Plaintiff potentially could have reasonable recovered at the time of trial (not including liquidated damages or attorneys' fees) if she had proven her case and represents a fair compromise on those potential damages.

### IV.    CLOSING

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of negotiations at two private mediations and a Settlement Conference before Hon. Steven Tiscione and the terms of the Settlement Agreement comport with Second Circuit case law.

As such, we respectfully request that the Court approve the Settlement Agreement and dismiss this action in accordance with the dismissal attached as **Exhibit D** hereto while retaining continuing

jurisdiction to enforce the terms and conditions of the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Sincerely,

Daniel Valles